## UNITED STATES *v.* WATKINS.

## BRINGIER *v.* UNITED STATES.

1. Where a grant of lands, made pursuant to a sale of them, and describing them by metes and bounds, according to a previous regular survey, was made by the Spanish Intendant, March 5, 1804, when, according to the views of the government of the United States, the title to Spain had terminated, but while she was in actual possession, and claimed the sovereignty of that part of Louisiana where the lands are situate, — *Held,* that the grant is subject to confirmation, under the act of June 22, 1860, entitled "An Act for the final adjustment of private land-claims in the States of Florida, Louisiana, and Missouri, and for other purposes." 12 Stat. 85.

2. Where the original documents to support a claim under said act are not produced, and there is no just ground to suspect their genuineness, the record of them, made by the proper commissioner, to whom the claim was originally presented, is sufficient *prima facie* evidence of their contents.

3. A. and B., assignees of the party to whom the grant was made in 1804, filed, under said act, a petition in the District Court praying for the confirmation of their claim covering lands, portions of which had been donated by the United States to settlers. Due proof was made of the grant and assignment; but it appeared that B. had conveyed his interest thereunder to C. A decree was passed dismissing the petition as to B., confirming the right of A. to one undivided half of so much of said lands whereto the title remained in the United States, and awarding him certificates of location equal in extent to one undivided half of the residue of said lands. *Held,* 1. That the decree was proper. 2. That "sold," where it occurs in the sixth section of said act, is of equivalent import with "sold or otherwise disposed of."

APPEALS from the District Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*The Solicitor-General*, for the United States.

*Mr. Willis Drummond* and *Mr. Robert H. Bradford, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case is very different from the preceding, being based upon a complete and perfect title, bearing date the 5th of March, 1804. This title consists of a Spanish grant, made by the Intendant Morales to one Charles Ramos, for twenty thousand arpents of land, situated in the St. Helena portion of Baton Rouge district, on the Amite River, and described by certain

metes and bounds, according to a survey thereof which had been previously regularly made. The grant was made in pursuance of a sale of the land; and, although made according to the views of our government after the title of Spain had ceased to exist, yet it was made whilst that government had actual possession of the country and claimed the sovereignty thereof; and, therefore, it is within the purview of the act of 1860, and comes clearly within the case of *United States* v. *Lynde*, 11 Wall. 632.

The government, however, questions the evidence by which the grant and other documents of title were proved before the District Court. The originals were not produced; but only certified copies of the record thereof, made and preserved by the commissioner for examining land titles for the district where the lands are situated. The claim and the evidence connected therewith were presented to said commissioner in 1814; and this evidence, including the grant, was recorded by him as required by law. He reported against the confirmation of the grant, on account of its being based on a sale, and not competent for the Spanish government to make. Amer. State Papers, Public Lands, vol. iii. pp. 58, 66. His records, however, have been preserved, and turned over to his successors, in whose possession they now are. We think that these records are competent evidence. The fourth section of the act of April 25, 1812 (2 Stat. 715), required every claimant of land in the district in question to deliver to the commissioner a notice of his claim in writing, together with a plat (in case a survey had been made) of the tracts claimed; and to deliver also, for the purpose of being recorded, every grant, or order of survey, deed, conveyance, or other written evidence of his claim; and it was directed that the same should be recorded by the clerk, in books kept for that purpose, on receiving the prescribed fees therefor. The fifth section required the commissioner to record, in like manner, the evidence adduced before him in reference to the justice and validity of each claim. Abstracts of this evidence, and the decision of the commissioner thereon, were to be transmitted to the Secretary of the Treasury. By the seventh section of the act of 1860, under which the present proceedings are had, it is provided, "That whenever any claim

is presented for confirmation, under the provisions of this act, which has heretofore been presented, before any board of commissioners under authority of Congress, the facts reported as proven by the former board shall be taken as true *prima facie ;* and the evidence offered before such former board, and remaining of record, shall be admitted on the examination of the claims made under the provisions of this act."

This seems to be conclusive on the point. If the non-production of the original documents is, in any case, accompanied by such circumstances as to raise a suspicion of their genuineness, the question of the sufficiency of the record may be properly raised. But in the absence of any such suspicion, the record is sufficient evidence, *prima facie,* of the documents it contains. We think the objection cannot be sustained.

Other questions raised in the case depend upon the disposition of the property subsequent to the original grant. On the 8th of March, 1804, three days after the date of the grant, Ramos conveyed the property to William Simpson and John Watkins. The petitioners in the case are, — 1st, the heirs of Watkins ; 2d, Melanie Bringier, formerly the widow of Simpson, and who, in the original petition, claimed his half of the lands as his sole legal heir. The claim of Watkins's heirs to represent him seems to be sufficiently substantiated. The case also shows a duly certified copy of the will of William Simpson, dated Jan. 16, 1813, which was duly executed and proved in New Orleans, and by which he gave and devised to his wife, Melanie Bringier Simpson, all his estate and property, with the exception of a few trifling legacies. But a supplemental and amended petition was filed in the case, by which Melanie Bringier admits that it had come to her memory and notice that, on or about the year 1813, she sold to James Innerarity, for a valuable consideration, all her right and interest in the succession of her then recently deceased husband, William Simpson ; which conveyance, she acknowledges, seems to estop her from claiming the undivided moiety of the lands, unless for the use and benefit of the said Innerarity, his heirs or legal representatives. She claims, however, that Innerarity was the testamentary executor of her husband, and was then engaged in settling his estate, which consisted mostly of the shares held by him in the extensive

house of John Forbes & Co., of which John Forbes, Innerarity, and Simpson were the partners. [The report of Commissioner Cosby shows (Amer. State Papers, Public Lands, vol. iii. p. 58) that the claim under the Ramos grant was presented to him in 1814, by the heirs of Innerarity.] The supplemental petition proceeds to say, "that it was an old-established maxim of said house that no partner could hold real estate purchased by him as separate property, but that it should belong to the house jointly; that, in the year 1814, it appears that the said Innerarity in presenting the land claim now sued on to the United States commissioner for land claims west of Pearl River, only claimed for himself, or the estate of William Simpson, 4,750 arpents, and stated in his notice of claim that 1,000 arpents belonged to the widow of Carlos Ramos, and 4,750 other arpents to John Lynde; that the transactions of those early days are involved in doubt and perplexity, and that the memory of your petitioner, after the lapse of more than half a century, fails to recall them clearly.

"Wherefore, if said title to said moiety of said lands sold by Charles Ramos to said Simpson, and devised to Melanie Bringier in his said will, has in fact been conveyed from her to said James Innerarity, either in his individual capacity or as a partner in the house of Forbes & Co., and whether the same is now vested in the legal representatives of said house, or the legal representatives of James Innerarity, or in them jointly with those of Ramos and Lynde, or in whomsoever the same may be vested in law or equity, if not in your petitioner, that then and in such case your petitioner acknowledges that she prosecutes this suit for the sole use and benefit of the said legal representatives of said Innerarity, or of them jointly with those of the house of Forbes & Co., the widow Ramos, and John Lynde, or for the sole use and benefit of whoever may hereafter be decreed to be the true, legal, and equitable owner of said lands."

Wherefore the petitioners prayed that the petitioner Melanie Bringier might be allowed to prosecute the suit to final decree, for the sole use of those who in a proper legal proceeding might establish their rights contradictory to her under the sale from her to said Innerarity, in case said sale should be held valid, and to embrace said land.

To this supplementary petition a demurrer was interposed, which was sustained by the court below, and judgment was given for one half of the grant in favor of the heirs of Watkins, and for the United States as to the other half. The United States appealed from the first part of the decree, and Melanie Bringier appealed from the latter part.

We see no reason for sustaining the appeal of the government. The fact that Simpson and Watkins were tenants in common of undivided moieties in the land, can produce no inconvenience in making a decree in favor of Watkins's heirs for one-half of the amount of land in controversy. All, or nearly all of it, has been disposed of by the government, and the requisite amount of certificates of location can be awarded to them for their share therein. This they ask, and it is equitable and just that they should have it.

As to the share of Simpson, there is greater difficulty. By the admission of Melanie Bringier, she has parted with all title to the lands. It is evident that no decree can be made in her favor. The heirs of Innerarity have already been before the court, and their claims have been rejected. *United States* v. *Innerarity*, 19 Wall. 595. On the whole, we think that the decree of the District Court ought to stand.

As to the point made by the government, that the lands in question were not sold by the United States to third parties, but were donated to settlers thereon; and that, therefore, the case does not come within the words of the act of 1860, granting to successful claimants other public lands in lieu of those claimed, we do not think that this objection is tenable. If the government has disposed of the lands in any manner, we think the fair interpretation of the act is, that the claimant should have other lands in lieu thereof. As we have so held in several other cases, we do not deem it necessary to discuss the subject further. The act may well be construed alongside of other acts *in pari materia*, where the words " sold or otherwise disposed of " are expressly used. They are all within the same mischief and the same reason.

*Decree affirmed.*